UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOLLY ANNE LUCENT, | ) | CIVIL ACTION NO. 4:19-CV-780 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff, Holly Anne Lucent, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 13). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, it is ORDERED that the Commissioner's final decision be VACATED and this case be REMANDED for a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

II.     BACKGROUND & PROCEDURAL HISTORY

On July 1, 2016, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 18; Doc. 11-2, p. 19).  In this application, Plaintiff alleged she became disabled as of July 1, 2012, when she was 31 years old, due to the following conditions: Multiple Sclerosis (M.S.); asthma; migraines; and depression. (Admin. Tr. 20; Doc. 11-2, p. 21). Plaintiff alleges that the combination of these conditions affects her ability to Lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and use her hands. (Admin. Tr. 343; Doc. 11-9, p. 42). Plaintiff has above a twelfth-grade education. (Admin. Tr. 25; Doc. 11-2, p. 26). Before the onset of her impairments, Plaintiff worked as an assistant manager and as a graphic designer. (Admin. Tr. 309; Doc. 11-9, p. 8).

On August 26, 2016, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 18; Doc. 11-2). On October 06, 2016, Plaintiff requested an administrative hearing. *Id.*

On April 16, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Richard Zack (the "ALJ"). *Id*. On May 29, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 15; Doc. 11-2, p. 16). On June 23, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication

and Review ("Appeals Council"). (Admin. Tr. 6; Doc. 11-2, p. 7). Along with her request, Plaintiff submitted evidence that was not available to the ALJ when he issued his decision. (Admin. Tr. 92; Doc. 11-2, p. 93); (Admin. Tr. 94-181; Doc. 11-3, pp. 3-90).

On March 08, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 11-2, p. 2).

On May 8, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court find that the Plaintiff is entitled to Social Security Disability benefits or remand the case for a further hearing. *Id*.

On August 13, 2019, the Commissioner filed an Answer. (Doc. 10). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with the Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 14) and the Commissioner's Brief (Doc. 15) have been filed. Plaintiff did not file a Reply. (Doc. 16). This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also*

20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on May 29, 2018.

caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was

accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following argument in her Brief:

> The ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of Plaintiff's treating neurologist, Douglas Nathanson, M.D., who provided the only opinion in the record regarding Plaintiff's impairments, to craft an RFC that is made up out of whole cloth.

(Doc. 14, p. 4).

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2018 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2014. (Admin. Tr. 20; Doc. 11-2, p. 21). Then, Plaintiff's application was evaluated at steps one through four of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between July 1, 2012, and December 31, 2014, (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 20-21; Doc. 11-2, p. 21-22). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s): multiple sclerosis, migraine

headaches, asthma, irritable bowel syndrome, and depression. (Admin. Tr. 21; Doc.

11-2, p. 22). At step three, the ALJ found that, during the relevant period, Plaintiff

did not have an impairment or combination of impairments that met or medically

equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1. (Admin. Tr. 21; Doc. 11-2, p. 22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ

found that, during the relevant period, Plaintiff retained the RFC to engage in

sedentary work as defined in 20 C.F.R. § 404.1567(a) subject to the following

additional limitations:

> could lift and carry up to 10 pounds occasionally and up to 2 or 3
> pounds frequently; could sit for up to 6 hours and stand/walk for up to
> 2 hours, each in an 8-hour workday; could understand, remember, and
> carry out instructions and make work-related decisions at an SVP 3-4
> level (semiskilled level); could have frequent contact with co-workers,
> supervisors, and the general public; could frequently reach (frontwards
> and laterally), handle, finger, and feel; could perform all postural
> activities, at least on an occasional basis; must avoid frequently
> pushing/pulling overhead, such as in the operation of arm controls) and
> working overhead; must avoid climbing ladders/scaffolds; must avoid
> hazards such as the operation of moving machinery, unprotected
> dangerous heights, and vibrations; and must avoid exposure to
> environmental irritants such as temperature extremes, humidity, or
> heavy concentrations of dusts, fumes, or gases.

(Admin. Tr. 24; Doc. 11-2, p. 25).

At step four, the ALJ found that, during the relevant period, Plaintiff could

not engage in her past relevant work. (Admin. Tr. 28; Doc. 11-2, p. 29). At step five,

the ALJ found that, considering Plaintiff's age, education and work experience,

Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 28; Doc. 11-2, p. 29). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: system monitor (DOT #374.369-010), order clerk (DOT #209.567-014), and inspector (DOT #669.687-014). (Admin. Tr. 29; Doc. 11-2, p. 30).

B.    WHETHER THE ALJ PROPERLY EVALUATED DR. NATHANSON'S MEDICAL OPINION

On May 24, 2017, Douglas Nathanson, M.D. ("Dr. Nathanson") completed a Multiple Sclerosis Medical Source Statement. (Admin. Tr. 1270-73, Doc. 11-22, p. 67-70). In this document, Dr. Nathanson stated that he had seen Plaintiff every four-six months since her visit on October 2, 2014. (Admin. Tr. 1270, Doc. 11-22, p. 67). In this statement, Dr. Nathanson opined that Plaintiff would likely be absent from work about four days per month as a result of her disability; could both sit and stand or walk for about four hours each in a working day, but only sit for one hour and stand for twenty minutes before needing a break; and could rarely lift ten pounds and only occasionally less than ten pounds (Admin. Tr. 1270-73, Doc. 11-22, p. 67-70). However, according to Dr. Nathanson's statement, this applied only to symptoms beginning on May 13, 2016. (Admin. Tr. 1273, Doc. 11-22, p. 70).

Dr. Nathanson is the only medical source of record who gave any opinion about the physical limitations resulting from Plaintiff's impairments (multiple sclerosis, migraine headaches, asthma, irritable bowel syndrome).

The ALJ gave no weight to Dr. Nathanson's opinion. In doing so, he explained:

> On May 24, 2017, Douglas Nathanson, MD completed a medical source statement on the claimant's behalf. Therein, he indicated that the claimant's multiple sclerosis, along with her mental health issues, caused the claimant to incur significant work-related limitation. However, Dr. Nathanson opined that the date of the claimant's identified limitation began on May 13, 2016, approximately 17 months after the date last insured (Exhibit 12F). Because this opinion does not address the claimant's conditions/symptomatology/degree of restriction prior to the date last insured, this opinion is given no weight.

(Admin. Tr. 26; Doc. 11-2, p. 27).

Plaintiff argues that the ALJ improperly discounted Dr. Nathanson's opinion. Specifically, she contends:

> Ultimately, it is not enough that the ALJ afforded Dr. Nathanson's opinion "no weight" because it was effectively dated May 13, 2106 and outside the relevant period. Consider this, if adopted, Dr. Nathanson's opinion is effectively disabling. Given the date contained on Dr. Nathanson's opinion, Plaintiff would be disabled as of May 13, 2016. The question for the ALJ then must be, how does this opinion stack up against the evidence provided during the relevant period? Certainly, if the ALJ believed the opinion to be consistent with the record at the time it was given, he would then be obligated to explain why it was inconsistent with the record evidence prior to Plaintiff's date last insured. Here, the ALJ provided no reasons to justify the opinion absent a review of that opinion with the whole record, as is his charge. This District has held that "[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly

where a claimant knows that her physician has deemed her disabled and, therefore, "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Ray v. Colvin,* No. 1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (citing *Wilson v. Commissioner of Social Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

(Doc. 14, p. 13). In the alternative, Plaintiff argues that:

As a lay person, the ALJ is not qualified to interpret Plaintiff's impairments related to her MS in functional terms. This District has held that, 'rarely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant.' *Gormont v. Astrue*, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013) (citing *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). This is especially so given the unique characteristics presented by an individual with multiple sclerosis.

(Doc. 14, p. 14).

The Commissioner addressed these arguments as follows:

Dr. Nathanson did not opine about Plaintiff's abilities prior to December 31, 2014. A claimant must establish disability prior to the expiration of her insured status. *See* 20 C.F.R. § 404.131(a); *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). When a treating opinion "shed[s] no light" on a claimant's condition during the relevant period, the ALJ may reasonably find it "lack[s] probative value." *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 Fed. App'x 743, 746 (3d Cir. Aug. 28, 2009). *See also Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744 (RBK), 2019 WL 2590994, at *4-5 (D.N.J. June 25, 2019) (ALJ properly rejected treating opinion dated more than a year after plaintiff's DLI that did not indicate it related back to relevant period); *Spires v. Colvin*, No. CV 15-920, 2015 WL 7422014, at *9 (E.D. Pa. Nov. 5, 2015), *report and recommendation adopted sub nom. Spires v. Comm'r*, No. CV 15-920, 2015 WL 7351584 (E.D. Pa. Nov. 20, 2015) (Evidence unrelated to period between alleged disability date and DLI is not probative); *Alston v. Astrue*, No. 10-cv-839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011) ("[M]edical evidence generated after the

date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue.").

. . . .

Plaintiff's argument that the RFC must be erroneous because the ALJ did not rely on her neurologist's opinion is misplaced. The ALJ discussed the relevant evidence that supported the RFC, and a medical opinion was not required to formulate it. As the ALJ said, Plaintiff's physical examination findings before the DLI were normal (Tr. 27, 714, 719, 735, 739). Therefore, the ALJ properly found her symptoms were mild prior to her DLI (Tr. 27).

The ALJ correctly noted that Plaintiff's migraine headaches and asthma were effectively treated (Tr. 25-26). Plaintiff's asthma was stable with medication (Tr. 26; *see e.g.*, Tr. 740, 744, 748). Plaintiff's lungs were consistently clear to auscultation bilaterally without wheezes, rales, or rhonchi (Tr. 26, 691, 710, 719, 729, 751, 753). Medication reduced the frequency of Plaintiff's migraines, giving her "good relief" (Tr. 26, 744, 746-47).

. . . .

The ALJ also discussed benign diagnostic and physical examinations that showed normal alignment; no fractures, joint deformities, effusion, inflammation, edema, skin discoloration, clubbing, or cyanosis; and normal strength of the upper and lower extremities (Tr. 26, 714, 719, 735, 739). The ALJ agreed with Plaintiff that her MS symptoms began before the DLI (Pl. Br. At 9, 12) as he found it was a severe impairment (Tr. 21). For example, in November 2014 before starting treatment, Plaintiff's gait was mildly spastic during a 25-foot walk, and her tandem gait was impaired (Tr. 710-11). Notably, she also had normal sensation and muscle bulk and full (5/5) motor strength of the upper and lower extremities (Tr. 710). At other times, after the DLI, Plaintiff's gait was noted as normal (*see e.g.*, Tr. 600, 604, 688). The RFC is the most a claimant can do despite the limitations caused by her impairments. 20 C.F.R. § 404.1509 (duration requirement). As the ALJ noted, he gave Plaintiff every benefit of the doubt in the RFC assessment (Tr. 27).

(Doc. 15, pp. 14-18).

With respect to Plaintiff's first argument—that the ALJ discounted Dr. Nathanson's opinion for improper reasons—I am not persuaded. Plaintiff is correct that an ALJ "cannot reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)). The Commissioner's regulations provide insight as to the "right" reasons for crediting or discounting medical opinions. the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, *any other factors brought to the ALJ's attention*.   20 C.F.R. §404.1527(c) (emphasis added). Courts have held that "medical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue." *Alston v.* Astrue, 2011 WL 4737605 at *3 (W.D. Pa. Oct. 5, 2011) (*citing Tezca v. Astrue*, No. 8-242, 2009 WL 1651536 at *9-10 (W.D. Pa. June 10, 2009). The Commissioner has cited to several cases where courts have upheld an ALJ's decision to give no weight to medical opinions where the opinions at issue did not relate to the relevant period. *See e.g.*

*Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743 (3d Cir. 2009) (upholding an ALJ's decision to discount a medical opinion issued in 2003 because it "lacked probative value" where the claimant's insured status expired in 1998); *Porter v. Comm'r of Soc. Sec.*, No. 18-cv-03744, 2019 WL 2590994 (D. N.J. June 25, 2019) (upholding an ALJ's decision to discount a medical opinion issued in 2013 where the claimant's insured status expired in 2011 because the opinion "was rendered more than a year after Plaintiff's date last insured and did not indicate that it related back to the period at issue."); *Spires v. Colvin*, No. 15-cv-920, 2015 WL 7422014 (E.D. Pa. Nov. 5, 2015) (upholding an ALJ's decision to reject a medical opinion issued that did not "relate to the relevant period between plaintiff's alleged disability onset date and his date last insured.") *report and recommendation adopted by* 2015 WL 7351584 (E.D. Pa. Nov. 20, 2015).

In this case, Plaintiff's date last insured is December 31, 2014. Dr. Nathanson's opinion was issued on May 24, 2017 and relates back to symptoms beginning on May 13, 2016. This opinion does not relate back to the "relevant period" between Plaintiff's onset date and date last insured. Furthermore, it is not reasonably proximate in time to the relevant period. Accordingly, I find that the ALJ cited a proper basis to discount Dr. Nathanson's opinion. Nonetheless, remand is required here because there is insufficient evidence in the record to support the ALJ's RFC assessment.

Plaintiff's next argument falls within the growing number of cases that require the Court to compare the language offered in two Third Circuit opinions: *Chandler v. Comm'r of Soc. Sec.* 667 F.3d 356 (3d Cir. 2012), and *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986). Plaintiff argues that the ALJ's RFC assessment is defective because it is not supported by any medical opinion about Plaintiff's physical functional capacity. Indeed, my review of the record confirms that Dr. Nathanson is the only source that offered any opinion about Plaintiff's physical limitations.

There is no dispute that it is the ALJ's duty to assess a claimant's RFC. 20 C.F.R. § 404.1546(c). Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when evaluating a claimant's RFC. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1513 (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); *Burnett v. Comm'r of Soc. Sec.* , 220 F.3d 112, 121 (3d Cir. 2000) ("In making a residual functional capacity determination, the ALJ must consider all evidence before him."). Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information. Thus, the

reality in Social Security cases is that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." *McKean v. Colvin,* 150 F. Supp.3d 406, 418 (M.D. Pa, 2015).

As two commentators have explained:

> it can reasonably be asserted that the ALJ has the right to determine whether a claimant can engage in sedentary, light, medium, or heavy work. The ALJ should not assume that physicians know the Social Security Administration's definitions of those terms. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. *However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination.* Of course, in such a situation a residual functional capacity determination is merely a mechanical determination, because the regulations clearly and explicitly define the various types of work that can be performed by claimants, based upon their physical capacities.

Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts*, § 3:47 (2019) (emphasis added) (internal footnotes omitted) *available on* Westlaw at SSFEDCT § 3:47.

In his decision, without the benefit of a medical opinion relating to the relevant period, the ALJ reasoned that:

The period of review begins on July 1, 2012 (the alleged onset date) and runs throughout December 31, 2014 (the date last insured). Therefore, in order to establish an inability to work, the medical records must corroborate the claimant's allegation of disability during this period. During the period of review, the medical records show that the claimant suffered from multiple sclerosis, migraine headaches, asthma irritable bowel syndrome (with intermittent symptoms) and depression. In November of 2016, the claimant underwent a physical examination by Anja O. Landis, MD. Therein, results showed that the claimant's cervical examination findings were normal, that she incurred bilateral expiratory wheezing, and no extremity edema. The claimant's asthma was considered stable with medication management, despite a late 2012 period of exacerbation. In May of 2013, the claimant's migraine headaches were described as chronic. The claimant maintained that she was not depressed but that she was simply feeling disappointment due to her ongoing medical issues. The symptoms of her headaches were ameliorated by medication management. In late July 2014, the claimant reported ongoing left ankle pain. Even though tenderness/pain was observed, physical examination showed no joint deformities, effusion, inflammation, edema, skin discoloration, clubbing, or cyanosis (Exhibit 4F). X-rays of this left lower extremity showed normal alignment, no significant osteoarthritis, and no evidence of fracture. An MRI of the claimant's brain taken in 2014 revealed white matter lesions consistent with multiple sclerosis. A cervical spinal MRI in late 2014 revealed mild disc disease at C5/C6 and C6/C7, but otherwise normal results. No demyelinating plaques were noted to the T2 level (Exhibits 5F and 14F). An eye examination indicated that the claimant's multiple sclerosis caused the claimant's vision to be at risk (due to side effects of this condition), but her vision remained correctible to 20/20 (Exhibit 8F). Jonida K. Cote, DO examined the claimant at the end of 2014 and found lungs clear to auscultation with no wheezes, rales, or rhonchi. The claimant's extremities exhibits no clubbing, cyanosis, or edema. Neurologically, the claimant's examination results were normal, inclusive of normal motor strength. Each specific joint of the claimant's bilateral upper and lower extremities was assessed as normal (Exhibit 10F).

(Admin. Tr. 25-26; Doc. 11-2, pp. 26-27).

During her administrative hearing Plaintiff was asked how her symptoms in

2014 differed from her symptoms on the date of the hearing. Plaintiff responded:

> There was just a lot of pain then. It was mostly pain and severe spasms
> that would cause my feet to turn inward, spasms in my hands that were
> just painful, which I still have pain in my hands and my legs and fee,
> but there's so much medicine I'm on right now, it keeps a lot of it at
> bay, so that was a lot of it then. Mostly, migraines and stuff, too. Now
> it's more weakness, trouble walking long periods, more and more
> fatigued. I can't stay awake. We had a guest over the weekend, and I
> fell asleep five times until the point where I finally snapped and said
> stop waking me up, please. I need to sleep. This was about 4:00 in the
> afternoon, and ever since—since 2014, I can honestly say my cognitive
> abilities have declined, and at the very least, in my opinion, I can't keep
> up with people. I needed help. Even one of my friends approached me
> and told me I needed to do something about it.

(Admin. Tr. 48-49; Doc. 11-2, pp. 49-50).

This case is a close one. Nothing in the evidence cited by the ALJ in his

decision or in Plaintiff's testimony is inconsistent with the ALJ's assessment that,

between July 2012 and December 2014 Plaintiff could engage in a limited range of

sedentary work. However, neither ALJ nor the Commissioner cited to any direct

support for the actual limitations assessed (i.e., nothing in the records suggests how

long Plaintiff could be expected to sit, stand, walk, or how much she can lift or

carry).

Although the Commissioner argues that there is ample support for the ALJ's

RFC assessment, the evidence cited in support of this position is unpersuasive. For

example, the Commissioner argues that treatment notes showing "normal" physical

examination findings before Plaintiff's date last insured support the ALJ's specific function-by-function RFC assessment. (Doc. 15, p. 16) (citing Admin Tr. 714, 719, 735, 739; Doc. 11-14, p. 83, Doc. 11-15, pp. 5, 21, 25). These treatment records, however, do not discuss Plaintiff's ability to perform specific functions (i.e., sitting, standing, lifting, carrying, reaching, etc.). They merely describe that Plaintiff had full strength, a full range of motion, normal musculoskeletal exam, no joint deformities, and had normal alignment in her left ankle. (Admin Tr. 714, 719, 735, 739; Doc. 11-14, p. 83, Doc. 11-15, pp. 5, 21, 25). Vague treatment records that include "normal" findings are simply inadequate to support the very specific findings that the ALJ is required to make.

On the other hand, Plaintiff does not describe why she would be unable to work at the level assessed by the ALJ. Instead, she merely argues that the ALJ's RFC assessment was "made up out of whole cloth." (Doc. 14, p. 4).

What is clear in this case is that Plaintiff was diagnosed with multiple sclerosis, and that some symptoms and limitations resulting from this condition were present during the relevant period. Because of the complex medical condition at issue, and the lack of any evidence that directly supports *any* specific limitation in the RFC, I am compelled to find that the RFC assessment and the ALJ's conclusion that Plaintiff is not disabled is not supported by substantial evidence. Accordingly, this case is remanded to the Commissioner to conduct a new administrative hearing.

The ALJ is strongly encouraged to either further develop the record as to Plaintiff's functional capacity during the relevant period, or more clearly cite to specific evidence in the existing record that supports the RFC assessment.

## V.   CONCLUSION

IT IS hereby ORDERED that Plaintiff's request for relief be GRANTED as follows:

(1)   The final decision of the Commissioner is VACATED, and this case is REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(2)   Final judgment should be issued in favor of Plaintiff Holly Anne Lucent.

(3)   An appropriate order shall issue

Date: May 7, 2020                    BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge